IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

DON EARL LEWIS                                                                                    PLAINTIFF

       v.                         Civil No. 4:12-cv-04100

MARTY BRAZELL; and
ERICA CALLWOOD                                                                           DEFENDANT


DON EARL LEWIS                                                                                    PLAINTIFF

                               Civil No. 4:12-cv-04139

STEPHEN WARD                                                                                  DEFENDANT


### REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Don Lewis filed Civil No. 4:12-cv-04100 and Civil No. 4:12-cv-04139 *pro se* pursuant to 42 U.S.C. § 1983. These cases were consolidated by Order dated April 7, 2014. ECF No. 32.[1]

Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3)(2011), the Honorable Susan O. Hickey, United States District Judge, referred this case to the undersigned for the purpose of making a Report and Recommendation. Currently before the Court are Separate Defendants' Second Motions for Summary Judgment. ECF Nos. 34 & 37. Plaintiff filed a single Response to both Motions using a Court prepared questionnaire. ECF No. 48. After careful consideration, the undersigned makes the following Report and Recommendation.

**1.    BACKGROUND**

---

[1] All references to the docket are to Civil No. 4:12-cv-04100 unless otherwise noted.

1

The events that are the subject of this lawsuit occurred while Plaintiff was housed in the Miller County Detention Center ("MCDC"). Plaintiff claims that Separate Defendants violated his constitutional rights by the illegal search and seizure of his deoxyribonucleic ("DNA") while he was housed in the MCDC. Specifically, Plaintiff claims Defendant Callwood—a nurse employed by Correctional Healthcare Company and working at the MCDC—unlawfully collected a DNA sample from him on May 10, 2012. Plaintiff also claims Defendant Brazell—warden at the MCDC—ordered Defendant Callwood to unlawfully collect Plaintiff's DNA (ECF No. 1) and Defendant Ward, the investigating officer on Plaintiff's pending criminal matter at the time, represented there was a court order for the DNA sample when in fact there was not (Civil No. 4:12-cv-04139, ECF No. 1).[2] Lastly, Plaintiff claims Defendant Brazell failed to return Plaintiff's original grievance forms to him.

Separate Defendants originally filed summary judgment in this matter in March and April 2013. ECF Nos. 13, 18). The Court denied Separate Defendants' Motions to allow for a more comprehensive briefing of the recent Supreme Court decision in *Maryland v. King*, __ U.S. __, 133 S.Ct. 1958 (2013) which directly addressed the constitutional implications of warrantless collections of DNA samples from arrestees. The Court also requested the parties brief whether a question should be certified to the Arkansas Supreme Court to determine whether Arkansas Code Annotated section 12-12-1006 applied to the facts of this case. The Court invited Separate Defendants to file second motions for summary judgment including these arguments. ECF No. 29. Separate Defendants responded with the instant Motions for Summary Judgment.

---

[2] Plaintiff made further claims against Defendant Ward that were dismissed by previous order. Civil No. 4:12-cv-04139, ECF No. 25.

**2.    LEGAL STANDARD**

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.,* 49 F.3d 399, 401 (8th Cir. 1995). The moving party has the burden of showing the absence of a genuine issue of material fact and that they are entitled to judgment as a matter of law, but the nonmoving party may not rest upon mere denials or allegations in the pleadings and must set forth specific facts to raise a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986). The Court must view all evidence and inferences in a light most favorable to the nonmoving party. *See McCleary v. ReliaStar Life Ins. Co.,* 682 F.3d 1116, 1119 (8th Cir. 2012). However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

**3.    DISCUSSION**

Plaintiff has two remaining claims before the Court: (1) all of the Separate Defendants violated his Fourth Amendment rights by taking his DNA without a warrant; and (2) Defendant Brazell violated Plaintiff's constitutional rights by failing to return his original grievances.

In their Motions, Separate Defendants contend the collection of Plaintiff's DNA was a legal

search under the Fourth Amendment.[3]  Separate Defendant Brazell also argues he was not involved in the collection of Plaintiff's DNA in any way and that Plaintiff has failed to state a claim regarding his grievances because inmates do not have a constitutional right to a grievance procedure.

A.  The Summary Judgment Record

On April 24, 2012, Plaintiff turned himself in to the Miller County Sheriff's Office because he heard there was a pending arrest warrant for him on a charge of rape.  ECF No. 48, p. 4. Plaintiff was booked into the MCDC on a felony rape charge that same day.  ECF No. 38-1.  On May 10, 2012, Defendant Callwood collected a DNA sample from Plaintiff at the direction of non-party Detention Officer Michael Bryan.  ECF No. 48, p. 4.  It is disputed whether Defendant Warden Brazell was involved in the collection of the DNA sample from Plaintiff.  Defendant Brazell swears in his affidavit that the Criminal Investigative Division of the Miller County Sheriff's Office ordered that a DNA sample be obtained from Plaintiff, and Defendant Brazell was unaware of this order until after the sample was taken from Plaintiff.  ECF No. 38-3.  Plaintiff swears, under penalty of perjury in his Response, Defendant Ward, lead investigator on Plaintiff's rape charge, requested Defendant Brazell have a DNA sample taken from Plaintiff.  Defendant

---

[3] I will refer to Separate Defendants Callwood, Brazell, and Ward collectively when discussing the arguments proffered regarding Plaintiff's DNA claims because even though Separate Defendants filed two separate Motions for Summary Judgment, Separate Defendants Brazell and Ward stated in their Motion: "[a]fter reading *Maryland v. King,* . . . and Separate Defendant Callwood's analysis of the case, Separate Defendants Brazell and Ward agree entirely with Callwood's analysis and move to adopt it as their own for purposes of this Brief.  Separate Defendants Brazell and Ward also agree with Callwood that certification of a question to the Arkansas Supreme Court regarding Arkansas Code Annotated section 12-12-1006 is unnecessary . . . ."  ECF No. 38.  Therefore, the Separate Defendants' arguments in support of dismissing Plaintiff's DNA claims are one and the same.

Brazell then ordered Officer Bryan to take Plaintiff to the medical department so the sample could be obtained by Defendant Callwood. ECF No. 48, p. 8.

It is undisputed that Defendant Callwood collected Plaintiff's DNA through a technique called a buccal swab. ECF No. 48, p. 5. It is also undisputed that Plaintiff's DNA was taken without the use of force. Plaintiff asserts in his Response, however, that Defendant Callwood informed him there was a court order for his DNA and also that Defendant Callwood and security staff at the MCDC threatened Plaintiff that he would be locked down in isolation until he provided the DNA sample. ECF No. 48, pp. 7-8.

Plaintiff filed a grievance on July 23, 2012 addressed to Defendant Brazell regarding this matter. Defendant Brazell responded with "Act 974 of 2009 gives the authority to take a DNA sample from you. A court order is not required . . . ." ECF No. 48, pp. 8-9. In his Response, Plaintiff disputes the contention that his DNA was taken pursuant to Arkansas Code Section 12-12-1006 (the codified Act 974 of 2009 referred to by Warden Brazell). According to Plaintiff, his DNA was not retrieved until sixteen (16) days after he was booked into the MCDC, after his initial appearance, and after he was appointed counsel. Plaintiff further asserts the MCDC does not have a procedure in place to retrieve arrestees DNA during the booking process pursuant to Section 12-12-1006. Finally, Plaintiff asserts his DNA was collected not for identification purposes but solely for investigative purposes. ECF No. 48, p. 28.

Regarding the grievance claim, Plaintiff notes in his Response to Separate Defendants' Motions for Summary Judgement, that his grievance claim is not related to the grievance procedure at the MCDC but instead that Defendant Brazell illegally seized Plaintiff's legal papers, namely his original grievances.

5

B. Grievance Claim

In his Complaint, Plaintiff claims Defendant Brazell's failure to return his original grievance forms violated his constitutional rights. Plaintiff does not have an independent constitutional right to a grievance procedure. *See Lomholt v. Holder,* 287 F.3d 683, 684 (8th Cir. 2002) (quoting *Buckley v. Barlow,* 997 F.2d 494, 495 (8th Cir.1993)). A jail's failure to process an inmate's grievances, without more, is not actionable under Section 1983. *Buckley,* 997 F.2d at 495.

Plaintiff states in his Response he is not challenging the MCDC grievance procedure. Plaintiff argues that his claim is that Defendant Brazell improperly confiscated Plaintiff's legal property (his original grievances) in an attempt to prevent Plaintiff from seeking legal redress. ECF No. 48, pp. 13, 21-22.

In his Complaint Plaintiff specifically stated:

> Miller County Detention Staff fail to copy back side of my grievance. As well as forward me the original copy, Warden Brazell now states all my grievance now his personal evidence. And refuse to forward original grievance iv'e filed. As well as refuse complete my Application to Proceed under forma pauperis.

ECF No. 1, p. 8 (errors in original). This statement by Plaintiff, in his Complaint, is far from a allegation of improper seizure of legal papers or denial of access to the Courts. Plaintiff cannot allege claims for the first time in his Response to Separate Defendants' Second Motions for Summary Judgment. Moreover, Plaintiff was able to file this case and proceeds in this matter *in forma pauperis*. Additionally, he attached copies of grievances to his Complaint and Response to Second Motion for Summary Judgment. Plaintiff was not denied access to the courts as evidenced by the docket in this litigation, nor was he harmed in anyway by Separate Defendant Brazell

refusing to return his original grievances. Lastly, Plaintiff has no constitutional right to his original grievances. Therefore, Plaintiff has failed to state a cognizable claim under Section 1983 regarding his original grievance forms.

### C. Defendant Brazell's involvement

Clearly there is a genuine issue of material fact regarding whether Defendant Brazell was involved in the collection of Plaintiff's DNA. Defendant Brazell swears in his affidavit that he was not aware of the collection until after it occurs and Plaintiff swears under penalty of perjury in his Response that Defendant Brazell ordered his staff to collect the DNA sample. Accordingly, Separate Defendant Brazell should not be dismissed from this case.

### D. DNA Claim

As an initial matter, the Court notes that it previously requested the parties brief whether the Court should certify a question to the Arkansas Supreme Court regarding the applicability of Arkansas Code Annotated section 12-12-1006 to this case. This issue arose because in Separate Defendants' first motions for summary judgment, Separate Defendants argued they acted pursuant to Arkansas Code Section 12-12-1006 which authorizes the warrantless collection of DNA from arrestees.

In the instant Motions for Summary Judgment, Separate Defendants argue certification is unnecessary. According to Separate Defendants, the issue before the Court is not whether Separate Defendants complied with state law when collecting Plaintiff's DNA, but whether the collection of Plaintiff's DNA was a reasonable search pursuant to the Fourth Amendment. The Court agrees with this interpretation of the issue before the Court. Therefore, I need only address whether Separate Defendants actions violated the Fourth Amendment. *See United States v. Burtton,* 599

F.3d 823, 828 (8th Cir. 2010) (when a federal court is evaluating an arrest, search, or seizure, it should look to the Fourth Amendment, not state statutes, to determine the legality of the officers actions).

The Fourth Amendment to the United States Constitution protects "personal privacy and dignity against unwarranted intrusion by the State." *Schmerber v. California,* 384 U.S. 757, 767 (1966). Specifically, the Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized.

U.S. Const. amend. 4. The Fourteenth Amendment extends these Fourth Amendment protections against actions by state officers. *Burlison v. Springfield Public Schools*, 708 F.3d 1034, 1039 (8th Cir. 2013). As noted in the text, the Fourth Amendment prohibits "unreasonable" searches, and "[t]he test of reasonableness . . . requires a balancing of the need for the particular search against the invasion of personal rights that the search entails." *Smook v. Minnahaha County,* 457 F.3d 806, 810 (8th Cir. 2006) (quoting *Bell v. Wolfish,* 441 U.S. 520, 559 (1979)). "A search unsupported by probable cause may be reasonable when special needs; beyond the normal need for law enforcement, make the warrant and probable-cause requirement impracticable." *Smook*, 457 F.3d at 810 (quoting *Bd. of Educ. v. Earls,* 536 U.S. 822, 829 (2002)). In determining whether a "special needs" situation justifies a search without individualized suspicion, "a court must undertake 'a fact-specific balancing of the intrusion . . . against the promotion of legitimate governmental interests." *Id*. Considerations courts may use in this balancing analysis include, but are not limited to, whether there is an issue of discretion for a neutral magistrate to decide, the

degree of the particular intrusion and the persons privacy expectations in the particular circumstance. *See Maryland v. King*, __ U.S. __, 133 S.Ct. 1958, 1969, 1978-79 (2013).

The Supreme Court recently addressed the issue of whether the warrantless collection of DNA, through the use of buccal swab, from an arrestee was reasonable under the Fourth Amendment. In *Maryland v. King*, King was arrested for first and second degree assault charges. While being booked into the county jail on these charges, jail booking personnel used a buccal swab to collect King's DNA pursuant to the Maryland DNA Collection Act. The *King* Court conducted a reasonableness analysis by weighing the legitimate governmental interest against the intrusion to King's privacy and held:

> In light of the context of a valid arrest supported by probable cause respondent's expectations of privacy were not offended by the minor intrusion of a brief swab of his cheeks. By contrast, that same context of arrest gives rise to significant state interests in identifying respondent not only so that the proper name can be attached to his charges but also so that the criminal justice system can make informed decisions concerning pretrial custody. Upon these considerations the Court concludes that DNA identification of arrestees is a reasonable search that can be considered part of a routine booking procedure. When officers make an arrest supported by probable cause to hold for a serious offense and they bring the suspect to the station to be detained in custody, taking and analyzing a cheek swab of the arrestee's DNA is, like fingerprinting and photographing, a legitimate police booking procedure that is reasonable under the Fourth Amendment.

*King,* 133 S.Ct. at 1980.

In coming to this conclusion, the Supreme Court noted that the legitimate government interest at issue was a well-established interest: "the need for law enforcement officers in a safe and accurate way to process and identify the persons and possessions they must take into custody." *Id.* at 1970. After a through analysis of this interest and the case law that supports it, the *King* Court specifically concluded:

> In sum, there can be little reason to question the legitimate interest of the government in

> knowing for an absolute certainty the identity of the person arrested, in knowing whether he is wanted elsewhere, and in ensuring his identification in the event he flees prosecution. To that end, courts have confirmed that the Fourth Amendment allows police to take certain routine administrative steps incident to arrest—i.e., . . . book[ing], photograph[ing], and fingerprint[ing]. DNA identification of arrestees, of the type approved by the Maryland statute here at issue, is no more than an extension of methods of identification long used in dealing with persons under arrest.

*King,* 133 S.Ct. at 1977.

The *King* Court also determined that a buccal swab incident to arrest was a "minimal intrusion:"

> [B]y contrast to the approved standard procedures incident to any arrest . . . a buccal swab involves an even more brief and still minimal intrusion. A gentle rub along the inside of the cheek does not break the skin, and it involves virtually no risk, trauma, or pain. A crucial factor in analyzing the magnitude of the intrusion . . . is the extent to which the procedure may threaten the safety or health of the individual, and nothing suggests that a buccal swab poses any physical danger whatsoever. A brief intrusion of an arrestee's person is subject to the Fourth Amendment, but a swab of this nature does not increase the indignity already attendant to normal incidents or arrest.

*King*, 133 S.Ct. at 1979. Additionally, the *King* Court found King, as an arrestee or detainee, had a diminished expectation of privacy: "Once an individual has been arrested on probable cause for a dangerous offense that may require detention before trial . . . his or her exceptions of privacy and freedom from police scrutiny are reduced." *Id.* at 1978.

The instant case clearly fits into the "special needs" case type of *King* and requires a reasonable analysis of "fact-specific balancing of the intrusion . . . against the promotion of legitimate governmental interests." *Smook*, 457 F.3d at 810. However, the facts presented here are markedly distinguishable from those presented in *King*. Thus, I am unwilling, based on the summary judgment record, to recommend extending the holding of *King* to the instant case.

Separate Defendants argue the collection of Plaintiff's DNA through a buccal swab is a

negligible intrusion. The *King* Court was clear that the collection of DNA, using a buccal swab, from an arrestee or detainee is a "minimal intrusion," but nevertheless a search implicating the Fourth Amendment. *King*, 133 S.Ct. 1979. Therefore, I must conduct the fact intensive balancing analysis of the intrusion on Plaintiff against the purported legitimate governmental interest of Defendants.

Separate Defendants also argue that the search was per se reasonable because there was no matter of discretion for a neutral magistrate to decide. Separate Defendants again rely on *King* for this contention. In *King* the Court did consider as part of its weighing analysis that the collection of DNA under the Maryland DNA Act was not "subject to the judgment of officers whose perspective might be colored by their primary involvement in the often competitive enterprise of ferreting out crime." *King*, 133 S.Ct. at 1970. Here, however, Plaintiff alleges that Defendant Stephen Ward, investigating officer on Plaintiff's rape charge, initiated the collection of Plaintiff's DNA for the purpose of comparing Plaintiff's DNA with the sample DNA Defendant Ward collected from the alleged victim. Separate Defendants do not dispute that it was the Criminal Investigation Division of Miller County Sheriff's Office that initiated the collection of Plaintiff's DNA. ECF No. 38-3. Based on the summary judgment record, it appears the collection of Plaintiff's DNA was subject to the judgment of the officer investigating the charges pending against Plaintiff. Therefore, I do not find the search was per se reasonable because of a lack of discretion for a neutral magistrate to decide.

Separate Defendants also argue that the collection of the DNA was a search incident to lawful arrest and according to *King* the collection was reasonable under the Fourth Amendment. It is well established that a warrantless search incident to a lawful arrest is valid, *United States v.*

11

*Robinson,* 414 U.S. 218, 224 (1973), and the fact of the lawful arrest, alone, is what authorizes the search. *Michigan v. DeFillippo*, 443 U.S. 31, 35 (1979). Here, however, the search did not occur until sixteen (16) days after Plaintiff's arrest while he was being detained in the MCDC. These facts do not indicate the collection of Plaintiff's DNA was incident to his arrest in the same way as King's. Further, Separate Defendants did not cite any case law supporting the contention that a search sixteen (16) days after a lawful arrest satisfied the requirements of the search incident to arrest exception to the Fourth Amendment.

Further, Separate Defendants argue the collection of Plaintiff's DNA was for identification purposes and it should be considered a natural part of the administrative steps incident to arrest and booking into county jail pursuant to *King*. I am also unconvinced by this argument. King's DNA was collected during his booking into the county jail by booking personnel. The *King* Court relied heavily on the facts that the DNA collection was incident to arrest and part of the administrative procedures incident to entry into a detention facility and for the legitimate government interest in identifying King. *See King*, 133 S.Ct. at 1977-80 (holding the legitimate government interest was identifying the person arrested and that DNA identification of arrestees was no more than an extension of identification methods already in place). Here, it is undisputed that the collection of Plaintiff's DNA did not take place until sixteen (16) days after he was booked into the MCDC and it was collected at the request of the Criminal Investigation Division of Miller County Sheriff's Office.

Further, the purported legitimate government interest at issue is disputed. While Separate Defendants argue they collected Plaintiff's DNA for identification and administrative purposes incident to his arrest and booking into the MCDC, Plaintiff alleges it was collected solely for

12

investigative purposes. ECF No. 48, p. 29. Plaintiff further alleges in his Response, that the MCDC has no procedures in place to collect DNA for identification purposes during the booking process. ECF No. 48, p. 29. Additionally, Plaintiff's DNA was not collected until sixteen (16) days after Plaintiff was booked into the MCDC and after he was arraigned on the charges of rape. It is unclear to the Court whether Separate Defendants' interest in collecting Plaintiff's DNA was the same interest in *King* or whether it was one of criminal investigation. While the *King* Court provided an extensive discussion of legitimate governmental interests in identifying arrestees, it did not consider investigation into the pending charges against the arrestee as a component of this legitimate governmental interest. *See King,* 133 S.Ct. at 1970-75.

Without an undisputed legitimate governmental interest on the record I am unable to determine whether the warrantless search of collecting Plaintiff's DNA was reasonable under the Fourth Amendment. Accordingly, based on the summary record, I find genuine issues of material fact exists as to whether the warrantless collection of Plaintiff's DNA was reasonable under the Fourth Amendment.

4. **CONCLUSION**

Accordingly, I recommend Separate Defendant Callwood's Second Motion for Summary Judgment (ECF No. 34) be **DENIED**, and Separate Defendants Brazell and Ward's Second Motion for Summary Judgment (ECF No. 37) be **GRANTED** in part and **DENIED** in part. Specifically, Plaintiff's grievance claims against Separate Defendant Brazell should be dismissed and Plaintiff's Fourth Amendment claims against Separate Defendants Callwood, Brazell, and Ward should remain.

**The parties have fourteen (14) days from receipt of the report and recommendation**

in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.

      DATED this 23rd day of February 2015.

                                        /s/ Barry A. Bryant  
                                        HON. BARRY A. BRYANT  
                                        UNITED STATES MAGISTRATE JUDGE