IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

DON EARL LEWIS                                                                                    PLAINTIFF

       v.                              Civil No. 4:12-cv-04100

MARTY BRAZELL; and
ERICA CALLWOOD                                                                                  DEFENDANT


DON EARL LEWIS                                                                                    PLAINTIFF

V.                              CIVIL NO. 4:12-cv-04139

STEPHEN WARD                                                                                    DEFENDANT


**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

      This is a consolidated civil rights action filed by Plaintiff, Don Lewis, pursuant to the provisions of 42 U.S.C. § 1983. Plaintiff proceeds *in forma pauperis* and is currently incarcerated in the Arkansas Department of Correction, Ouachita River Unit in Malvern, Arkansas ("ADC"). The Court held a bench trial on August 24, 2015 to address Plaintiff's claims. After review of the record and evidence presented at trial, the Court makes the following findings of fact and conclusions of law.

**I. BACKGROUND**

      The events at issue, occurred while Plaintiff was incarcerated in the Miller County Detention Center ("MCDC"). As noted above, Plaintiff is now incarcerated in the ADC. Plaintiff's only claim remaining before the Court is that his Fourth Amendment rights were violated when Defendants illegally obtained his deoxyribonucleic ("DNA") through an unreasonable search at the MCDC. (ECF No. 10).

At the bench trial, the testimony of the following witnesses was heard: (1) Plaintiff Don Lewis; (2) Officer Shane Johnston; (3) Defendant Erica Callwood; (4) Defendant Marty Brazell, (5) Defendant Michael Bryan; (6) Defendant Stephen Ward; and (7) Sheriff Ron Stovall.

Plaintiff offered Exhibits 1 - 3 including: (1) Plaintiff's Arrest and Booking Detail; (2) Affidavit of Erica Callwood; and (3) Arkansas State Crime Laboratory Evidence Submission Form. All of Plaintiff's exhibits were admitted without objection.

Separate Defendants did not offer any exhibits into evidence at the trial.

## II. FINDINGS OF FACT

This case revolves around a single incident occurring in the MCDC on May 10, 2012 when Plaintiff's DNA was collected without a warrant. Plaintiff claims this warrantless search violated his Fourth Amendment rights. The Court's findings of fact regarding Plaintiff's claim are as follows:

1. Plaintiff was booked into the MCDC on April 24, 2012 on a charge of felony rape. Plaintiff's Ex. 1.

2. Plaintiff was fingerprinted during booking but DNA was not collected during the booking procedures. Plaintiff's Ex. 1.

3. Defendant Erica Callwood was the nurse at the MCDC at the time in issue.

4. Defendant Michael Bryan was a jailer at the MCDC at the time in issue.

5. Defendant Stephen Ward was a Corporal in the Criminal Investigation Unit at Miller County Sheriff's Office during the time in issue and he was assigned the investigation of Plaintiff's criminal rape charge.

6. Defendant Marty Brazell was the jail administrator at the MCDC during the time in issue.

7. Plaintiff's DNA was collected on May 10, 2012, sixteen (16) days after he was booked into the MCDC.

8. Defendant Callwood collected Plaintiff's DNA by using a procedure known as a buccal swab.

9. There was no warrant or court order for the collection of Plaintiff's DNA.

10. Defendant Callwood received direction to take Plaintiff's DNA from Defendant Stephen Ward.

11. Defendant Michael Bryan brought Plaintiff from his cell to the infirmary at the MCDC for Defendant Callwood to take Plaintiff's DNA.

12. Plaintiff was not handcuffed or otherwise restrained, and Defendant Bryan and Defendant Callwood were the only persons present while Plaintiff's DNA was taken.

13. Neither Defendant Callwood nor Defendant Bryan represented to Plaintiff there was a court order to take his DNA.

14. Plaintiff did not verbally or physically resist before, or during, Defendant Callwood obtaining the DNA sample.

15. The collection of Plaintiff's DNA was ordered by Defendant Ward after the alleged victim in Plaintiff's criminal case provided a DNA sample.

16. Both the victim's DNA and Plaintiff's DNA were sent to the Arkansas Crime Laboratory together for analysis.

17. Defendants Ward, Bryan, and Callwood believed they were in compliance with Arkansas law in the warrantless taking of Plaintiff's DNA.

18. Defendant Brazell did not order the collection of Plaintiff's DNA, nor did he have any knowledge Plaintiff's DNA was being collected until after the collection occurred.

19. Plaintiff claims the DNA collection derailed his criminal case, destroyed his financial and personal life, and embarrassed him and his family.[1]

### III. CONCLUSIONS OF LAW

Section 1983 provides a federal cause of action for the deprivation, under color of law, of a citizen's "rights, privileges, or immunities secured by the Constitution and laws" of the United States. In order to state a claim under 42 U.S.C. § 1983, plaintiff must allege that the defendant acted under color of state law and that he violated a right secured by the Constitution. *West v. Atkins*, 487 U.S. 42 (1988); *Dunham v. Wadley*, 195 F.3d 1007, 1009 (8th Cir.1999). The deprivation must be intentional; mere negligence will not suffice to state a claim for deprivation of a constitutional right under section 1983. *Daniels v. Williams*, 474 U.S. 327 (1986); *Davidson v. Cannon*, 474 U.S. 344 (1986).

Initially, the Court will dismiss Michael Bryan from this case because Plaintiff failed to state a claim against him in his Complaint or Supplement. By Order dated March 19, 2015, Magistrate Judge Barry Bryant granted Plaintiff's Motion to Amend his Complaint by adding Michael Bryan as a defendant in this matter. Judge Bryant directed that Plaintiff's Motion to Amend be filed as a Supplement to Plaintiff's Complaint. (ECF No. 62). In Plaintiff's Supplement he requested that all references to "unknown John Doe Defendant" in his original

---

[1] Plaintiff also claims he was injured by being handcuffed, having his "arms jacked up," and being threatened with isolation all prior to the collection of his DNA. Because the Court finds Plaintiff was not handcuffed or threatened in anyway prior to the collection of his DNA, these claimed injuries are nullified.

Complaint be replaced with the name Michael Bryan. (ECF No. 63). The Court was unable to locate any references to an "unknown John Doe Defendant" in Plaintiff's original Complaint. At trial, the Court requested that Plaintiff's counsel produce to the Court any and all references to such John Doe Defendant. Plaintiff filed a Brief in Response to Inquiry Regarding the Claims Pleaded Against Officer Michael Bryan on September 1, 2015. (ECF No. 108). In this Brief, Plaintiff noted that the first reference to Michael Bryan was in his Response to Motion for Summary Judgment on June 24, 2013. He did not point the Court to any references to an unknown John Doe Defendant in his Complaint.

While *pro se* pleadings are to be construed liberally, a *pro se* litigant is not excused from complying with substantive and procedural law. *Burgs v. Sissel*, 745 F.2d 526, 528 (8th Cir. 1984). Federal Rule of Civil Procedure 8(a) contains the general pleading rules and requires a complaint to present "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Plaintiff simply failed to make any allegations against an unknown John Doe Defendant or Defendant Michael Bryan. Accordingly, the Court must dismiss Defendant Michael Bryan as Plaintiff has failed to state a claim against him.

The Court now sets forth its conclusions of law related to the remaining Defendants:

1. The Court finds without merit Defendant Callwood's assertion that no cognizable claim is stated under the ruling of the Supreme Court in *Heck v. Humphrey*, 512 U.S. 477 (1994). In *Heck*, the Supreme Court held that a claim for damages for "allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid" is not cognizable until "the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state

       tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck*, 512 U.S. at 486-87.  The Court noted that if a successful claim would not demonstrate the invalidity of an outstanding criminal judgment, it should be allowed to proceed. *Id*.  A general exception exists, however, for damages actions stemming from an illegal search because of doctrines such as independent source, inevitable discovery, and harmless error. *Heck*, 512 U.S. at 487 n.7; *see also Simmons v. O'Brien*, 77 F.3d 1093, 1095 (8th Cir. 1996).  Accordingly, Plaintiff's Fourth Amendment claim is not barred by the holding of the Supreme Court in *Heck*.

2. A section 1983 plaintiff must prove not only that the search was unlawful, but that it caused him actual and compensable injury in order to recover compensatory damages.  This actual and compensable injury does *not* encompass the 'injury' of being convicted and imprisoned (until his conviction has been overturned). *Heck*, 512 U.S. at 487 n. 7.

3. The 2012 version of Arkansas Code Annotated § 12-12-1006[2] allowed for a DNA sample to be taken from an arrestee "immediately following an arrest" for one of the enumerated offenses in the statute.  Rape was one of theses enumerated offenses.  Based on the existing facts, Plaintiff's DNA sample was not authorized by this statute.

4. However, the issue before the Court is not whether Defendants complied with Arkansas law, Ark. Code Ann. § 12-12-1006, but instead, whether Defendants' actions violated the Constitution of the United States and more specifically the Fourth Amendment. *See Knowles v. Iowa,* 525 U.S. 113, 116 (1998) (holding that a search done pursuant to state law nonetheless violated the Fourth Amendment); *United States v. Maholy*, 1 F.3d 718, 721

---

[2] The version in effect at the time Plaintiff's DNA was taken.

          (8th Cir. 1993) (in determining the admissibility of evidence obtained by state officers the legality of the search is resolved by Fourth Amendment analysis).

5.     The Fourth Amendment to the United States Constitution protects "personal privacy and dignity against unwarranted intrusion by the State." *Schmerber v. California*, 384 U.S. 757, 767 (1966). Specifically, the Fourth Amendment provides:

> [t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized.

U.S. Const. amend. 4.

6.     The Fourteenth Amendment extends these Fourth Amendment protections to the states. *Burlison v. Springfield Public Schools*, 708 F.3d 1034, 1039 (8th Cir. 2013).

7.     "Under the Fourth Amendment a warrantless search of the person is reasonable only if it falls within a recognized exception to the warrant requirement." *United States v. Chartier*, 772 F.3d 539, 545 (8th Cir. 2014). Recognized exceptions include searches incident to arrest, pursuant to consent, and "when special needs, beyond the normal need for law enforcement, make the warrant and probable cause requirement impractical," *Smook v. Minnahaha County*, 457 F.3d 806, 810 (8th Cir. 2006).

8.     The Fourth Amendment prohibits "unreasonable" searches, and "[t]he test of reasonableness . . . requires a balancing of the need for the particular search against the invasion of personal rights that the search entails." *Id* (quoting *Bell v. Wolfish*, 441 U.S. 520, 559 (1979). "Fourth Amendment reasonableness is predominately an objective inquiry. We ask whether the circumstances, viewed objectively, justify [the challenged]

action. This approach recognizes that the Fourth Amendment regulates conduct rather than thoughts." *Ashcroft v. al-Kidd*, 563 U.S. 731, 131 S. Ct. 2074, 2080 (2011) (internal quotation marks and citation omitted).

9. "A search unsupported by probable cause may be reasonable when special needs; beyond the normal need for law enforcement, make the warrant and probable-cause requirement impracticable." *Smook*, 457 F.3d at 810 (*quoting Bd. of Educ. v. Earls*, 536 U.S. 822, 829 (2002)); *see also Ashcroft*, 131 S. Ct. at 2081. In determining whether a "special needs" situation justifies a search without individualized suspicion, "a court must undertake 'a fact-specific balancing of the intrusion . . . against the promotion of legitimate governmental interests." *Smook,* 457 F.3d at 810. Considerations courts may use in this balancing analysis include, but are not limited to, whether there is an issue of discretion for a neutral magistrate to decide, the degree of the particular intrusion, and the person's privacy expectations in the particular circumstance. *See Maryland v. King*, __ U.S. __, 133 S. Ct. 1958, 1969, 1978-79 (2013).

10. "The need for a warrant is perhaps least when the search involves no discretion that could properly be limited by the interpolation of a neutral magistrate between the citizen and the law enforcement officer." *Maryland*, 133 S. Ct. at 1969 (internal quotation marks and citation omitted); *see also Ashcroft*, 131 S. Ct. at 2081 (describing cases in which special needs existed).

11. It is undisputed that "using a buccal swab on the inner tissues of a person's cheek in order to obtain DNA samples is a search. Virtually any intrusion into the human body, will work

an invasion of cherished personal security that is subject to constitutional scrutiny." *Maryland*, 133 S. Ct. at 1968-69 (internal quotation marks and citations omitted).

12. The use of a buccal swab only involves "a light touch on the inside of the cheek. . . . The fact [that] an intrusion is negligible is of central relevance to determining reasonableness, although it is still a search as the law defines that term." *Maryland*, 133 S. Ct. 1969 (2013) (internal quotation marks and citations omitted).

13. The Supreme Court in *Maryland*, found that the warrantless collection of DNA from an arrestee, through the use of a buccal swab, during the booking process was reasonable under the Fourth Amendment. While this case informs the Court's Fourth Amendment analysis, the holding does not extend to the warrantless collection of DNA evidence from the Plaintiff sixteen (16) days after he was booked into the detention center.

14. The DNA swab in this case was not taken:  incident to the arrest; as part of a routine booking procedure; to be used in assisting or ensuring that the correct individual had been arrested;  or for the purpose of deciding pretrial custody issues. Instead, the DNA swab was taken in response to a request by Corporal Ward from the Criminal Investigation Unit of the Miller County Sheriff's Office. Clearly, the DNA swab was taken to aide in the criminal prosecution of the Plaintiff and to establish his guilt.

15. "Once an individual has been arrested on probable cause for a dangerous offense that may require detention before trial, however, his or her expectations of privacy and freedom from police scrutiny are reduced." *Maryland*, 133 S. Ct. at 1978 (internal quotation marks and citations omitted).

16. At the time the DNA was taken, Plaintiff was in custody. Nothing in the record suggests he was about to be released from custody. Plaintiff had already been in custody for sixteen days. There were no important non-law enforcement purposes for the collection. There was ample time and opportunity for a warrant to be obtained to take the Plaintiff's DNA. The warrant requirement was not impractical under these circumstances. Thus, the special needs exception to the Fourth Amendment warrant requirement is inapplicable.

17. Consent is also a recognized exception to the warrant requirement. "Consensual searches do not violate the Fourth Amendment because it is no doubt reasonable for the police to conduct a search once they have been permitted to do so." *Florida v. Jimeno*, 500 U.S. 248, 250-51 (1991) (internal quotation marks and citation omitted). Consent may be express or implied. *United States v. Williams,* 521 F.3d 902, 906 (8th Cir. 2008). To justify a search based on consent, the Defendants must prove that there was consent and that it was voluntary. *Florida v. Royer,* 460 U.S. 491, 497 (1983). The question for whether implied consent was given is "whether the [Plaintiff's] conduct would have caused a reasonable person to believe that he consented." *Williams*, 521 F.3d at 906-07.

18. Defendants maintain that the Plaintiff's lack of resistance and failure to object during the taking of the DNA sample constitutes implied consent. The Court disagrees. Plaintiff was in custody and escorted by an officer to a facility nurse to have the DNA sample collected. He was not asked to give his consent either verbally or in writing. Plaintiff did nothing to manifest his consent. A reasonable person would have concluded he had no choice but to allow the nurse to take the DNA sample. *United States v. Poe*, 462 F.3d 997, 1000 (8th Cir. 2006). Under the circumstances, his lack of objection cannot be construed as implied

consent. *Cf. United States v. Hillard*, 490 F.3d 635, 639 (8th Cir. 2007) ("Hillard's silence in the face of events taking place before him in his own residence gave the officers no reason to believe Hillard had a superior privacy interest or to doubt Cole's authority over the Arden residence."); *United States v. Stapleton*, 10 F.3d 582, 584 (8th Cir. 1993) (objectively reasonable for the officer conducting the search of a vehicle to conclude he either had all the consent that was constitutionally required, after receiving the driver's consent, or had the passenger defendant's implied consent, given the defendant's silence during the search).

19. Under the circumstances of this case, the collection of the DNA sample violated the Fourth Amendment.

20. Plaintiff's claims against Warden Marty Brazell, however, fail as a matter of law. A claim of deprivation of a constitutional right cannot be based on a *respondeat superior* theory of liability. *See Monell v. Department of Social Servs*, 436 U.S. 654, 694 (1978). "[A] supervisor is not vicariously liable under 42 U.S.C. § 1983 for an employee's unconstitutional activity." *White v. Holmes*, 21 F.3d 277, 280 (8th Cir. 1994); *see also Whitson v. Stone County Jail*, 602 F.3d 920, 928 (8th Cir. 2010) ("In a § 1983 case, an official is only liable for his own misconduct and is not accountable for the misdeeds of his agents under a theory such as *respondeat superior* or supervisor liability") (internal quotations omitted); *Keeper v. King*, 130 F.3d 1309, 1314 (8th Cir. 1997) ("general responsibility for supervising the operations of a prison is insufficient to establish the personal involvement required to support liability"). "Liability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights. To establish

       personal liability of the supervisory defendants, [Plaintiff] must allege specific facts of personal involvement in, or direct responsibility for, a deprivation of his constitutional rights." *Clemmons v. Armontrout*, 477 F.3d 962, 967 (8th Cir. 2007) (*quoting Mayorga v. Missouri*, 442 F.3d 1128, 1132 (8th Cir. 2006)). No such facts exist in this case. Warden Brazell did not order the collection of the DNA sample or even know it was being collected until after the fact.

21. Plaintiff's official capacity claims also fail as a matter of law. Such claims are "functionally equivalent to a suit against the employing governmental entity." *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010). In other words, the official capacity claims are treated as claims against Miller County. *See Murray v. Lene*, 595 F.3d 868, 873 (8th Cir. 2010). To establish Miller County's liability under section 1983, "plaintiff must show that a constitutional violation was committed pursuant to an official custom, policy, or practice of the governmental entity." *Moyle v. Anderson*, 571 F.3d 814, 817 (8th Cir. 2009)(citation omitted). No evidence suggests the existence of any such custom, policy, or practice.

22. As Plaintiff's conviction has not been overturned or invalidated, he must establish that he suffered "actual, compensable injury," separate and apart from the "'injury' of being convicted and imprisoned in order to recover compensatory damages. *Heck*, 512 U.S. at 487 n. 7. On the record before the Court, the only conceivable injury Plaintiff suffered from the collection of the DNA evidence, was his conviction. Plaintiff has suffered no compensable injury. His compensatory damages claims are therefore barred by *Heck*.

23. In *Carey v. Piphus*, 435 U.S. 247 (1978), the Supreme Court held that if a constitutional violation exists without proof on injury that the Plaintiff was entitled to an award of nominal damages in the amount of $1. The holding of *Carey* has been extended to cases where no compensable damages are recoverable under *Heck. See DePugh v. Penning*, 888 F. Supp. 959, 980 (N.D. Iowa 1995). In *DePugh*, the Court held that even if the Plaintiff could show no actual damages as a result of a search violative of the Fourth Amendment, he is entitled to pursue his cause of action under section 1983 and obtain at least nominal damages and potentially punitive damages. *Id.*

24. Having found a violation of the Fourth Amendment, the Court finds the Plaintiff is entitled to an award of nominal damages in the amount of $1.00.

25. The Court finds no basis for the recovery of punitive damages. An award of punitive damages is appropriate only when the Defendants' "conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983). The facts establish that Defendant Ward believed he was complying with Arkansas law and that a search warrant was not necessary. A misunderstanding of the law does not equate to the type of conduct necessary to support an award of punitive damages. There is even less support for an award of punitive damages against Defendant Callwood. She was merely acting pursuant to the orders of Stephen Ward.

### III. CONCLUSION

Based upon the above findings of fact and conclusions of law, the Court finds that:

A. All official capacity claims are subject to dismissal and all individual capacity claims against Warden Brazell and Michael Bryan[3] are subject to dismissal. Plaintiff's individual capacity claims against Defendant Michael Bryan will be dismissed without prejudice, and all of Plaintiff's official capacity claims and Plaintiff's individual capacity claims against Defendant Marty Brazell will be dismissed with prejudice; and

B. Plaintiff is entitled to a judgment against Defendants Stephen Ward and Erica Callwood and an award of nominal damages in the amount of $1.00 against each Defendant.

A judgment of even date consistent with this opinion shall issue.

**DATED**, this 28th day of September 2015.

/s/ Susan O. Hickey
Susan O. Hickey
United States District Judge

---

[3] As explained above, Plaintiff failed to state any claims against Michael Bryan in his Complaint or Supplement.